United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SU AI, an individual,

Plaintiff,

v.

TENCENT AMERICA LLC, a Delaware limited liability company; YUNSHAN ZHU, an individual; and DOES 1-50, inclusive,

Defendants.

Case No. 26-cv-02498-NW

**ORDER DENYING MOTION TO REMAND; GRANTING MOTION TO COMPEL ARBITRATION; AND TERMINATING MOTION TO DISMISS**

Re: ECF Nos. 8, 9

Plaintiff Su Ai ("Plaintiff" or "Ai") sued Tencent America, LLC ("Tencent"), her former employer, and Yunshan Zhu, her former co-worker (together, "Defendants"), for sexual harassment, retaliation, and discrimination. ECF No. 1. Plaintiff alleges that, for years, she was "subjected to repeated unwelcome conduct" of a "sexual and gender-based nature" by her then co-worker, Zhu. ECF No. 8-3 at 10.

Before the Court are three motions with intertwined issues: (1) Tencent moves to compel arbitration against Plaintiff, citing the arbitration provision in Plaintiff's employment agreement, ECF No. 8; (2) Defendants, together, move to dismiss Plaintiff's sexual harassment claim, *id.*; and (3) Plaintiff moves to remand her case to state court, ECF No. 9. Each motion is fully briefed. ECF Nos. 10, 11, 15, 18.

The Court held a hearing on the three motions on June 24, 2026.[1] For the foregoing

[1] On July 15, 2026, Plaintiff filed an administrative motion seeking leave to file a supplemental brief. ECF No. 29. The supplemental brief addresses *Decloedt v. Radnet Management, Inc.*, No. B343963 (Cal. Ct. App., 2d Dist., Div. 1, June 26, 2026), which was certified for publication on July 7, 2026, after the Court took the motions under submission. For good cause shown, the Court grants Plaintiff's request and accepts the supplemental brief as filed. Defendants filed an opposition with responsive arguments on July 20, 2026. ECF No. 30.

reasons, Plaintiff's motion to remand is DENIED, Tencent's motion to compel arbitration is GRANTED, and Defendants' motion to dismiss is terminated.

## I. BACKGROUND[2]

Plaintiff began working as a product manager at Tencent, a gaming company, in May 2023. Plaintiff primarily worked out of Tencent's Palo Alto, California office. As part of Plaintiff's onboarding process, Plaintiff signed an at-will employment agreement that contained an arbitration provision (the "Arbitration Agreement").

Shortly after starting her job, "Plaintiff began experiencing inappropriate, unprofessional, and gender-based conduct from a male colleague," Zhu, who is a "senior engineer who reported to the same manager as Plaintiff." Compl. ¶ 19. While Zhu was not Plaintiff's manager, Plaintiff contends that Zhu "wielded influence on the team and had a close professional relationship with Plaintiff's direct manager." *Id.*

Plaintiff explains that "from the beginning of her employment and continuing through 2024, Zhu made repeated sexually suggestive remarks to and about Plaintiff in Tencent's official workplace communication system, WeCom, as well as during team meetings." *Id.* ¶ 21. Plaintiff alleges that Zhu additionally "referred to coworkers using slang terms for sexual threesomes," and these comments made Plaintiff and other colleagues uncomfortable. *Id.* ¶ 23. "Zhu also publicly belittled Plaintiff in WeCom chats and team settings, accusing her of 'yelling,' telling her to 'mind your own business,' . . . comments that purposefully attempted to demean and undermined her." *Id.* ¶ 25. "Some coworkers privately expressed concern for Plaintiff's well-being and acknowledged the inappropriate tone Zhu had set in workplace communications." *Id.* ¶ 25.

Plaintiff highlights three specific comments from Zhu. First, "[i]n one instance, when Plaintiff asked Zhu for a document needed for her work, he responded with, 'Let me put on my pants first,' a comment with inappropriate sexual connotations." *Id.* ¶ 22. Second and third, Zhu called Plaintiff "boss's wife" and "landlady who collects rent." *Id.* ¶ 23. Plaintiff emphasizes that these terms were "degrading and reinforced sexist stereotypes about women in the work

---

[2] Unless otherwise noted, the background information comes directly from Plaintiff's complaint. Compl., ECF No. 1-2.

United States District Court
Northern District of California

environment." *Id.* ¶ 24.

On or about July 19, 2024, Plaintiff filed a formal complaint with the Human Resources ("HR") team regarding Zhu's behavior. The HR team conducted an investigation, and on August 7, 2024, an HR representative informed Plaintiff that the misconduct had been confirmed. On August 19, 2024, HR held a meeting with Plaintiff and Zhu's team about improving workplace behavior. Shortly after the HR meeting, Plaintiff began experiencing a pattern of retaliatory treatment from her manager. Plaintiff was removed from key meetings related to initiatives she was leading, she was reassigned without notice to a less critical project, and her budget management authority was eventually taken away.

This treatment continued through May 2025. On May 6, 2025, Plaintiff sent a message to a senior HR team member asking to discuss the ongoing retaliatory treatment and feedback she had received about being "bad at teamwork." *Id.* ¶ 37. On May 14, 2025, Plaintiff was informed by the senior HR team member that her role was eliminated and that she was terminated effective the following day.

Plaintiff brings seven claims: (1) violation of California Equal Pay Act (Labor Code § 1197.5) against Tencent; (2) sexual harassment-hostile work environment under (Gov. Code § 12940(j)) against both Defendants; (3) retaliation (Gov. Code § 12940(h)) against Tencent; (4) retaliation in violation of Labor Code § 1102.5 against Tencent; (5) failure to prevent harassment, discrimination, and retaliation (Gov. Code § 12940(k)) against Tencent; (6) age discrimination against both Defendants; and (7) failure to pay overtime compensation (Labor Code § 510,558, 1171, 1194, 1197) against Tencent.

## II. DISCUSSION

Because the Court must first find that it has jurisdiction before it can reach the merits, the Court evaluates Plaintiff's motion to remand before turning to Tencent's motion to compel arbitration, and finally to Defendants' motion to dismiss. *Rivera v. R.R. Ret. Bd.*, 262 F.3d 1005, 1008 (9th Cir. 2001).

### A. Motion to Remand

Plaintiff initiated her case in Santa Clara Superior Court. ECF No. 1-2. On March 23,

2026, Defendants removed the case to this District pursuant to 9 U.S.C. §§ 202, 203, 205, which provide district courts with original jurisdiction over an action falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). ECF No. 1. In her motion to remand, Plaintiff argues that Defendants' basis for removal is rendered unenforceable by the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), 9 U.S.C. § 402. Plaintiff contends that the EFAA makes an arbitration agreement unenforceable as to any case relating to a sexual harassment dispute. Therefore, in Plaintiff's view, the Arbitration Agreement cannot provide the basis for federal jurisdiction under 9 U.S.C. §§ 202, 203, nor the grounds for removal under § 205.

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks omitted). A case shall be remanded to state court if at any time before final judgment it appears a removing court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). Courts strictly construe the removal statute against removal jurisdiction. *See Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Luther v. Countrywide Home Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008). "A defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." *Luther*, 533 F.3d at 1034; *see also Moore–Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) ("[A]ny doubt about the right of removal requires resolution in favor of remand.").

Federal courts "have original jurisdiction" over an "action or proceeding" that falls under the Convention. *See* 9 U.S.C. § 203 ("[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."). To assess whether a case has been properly removed under § 205, district courts first look to whether the subject matter of the dispute relates to the arbitration agreement, and second, to whether the agreement falls under the Convention. 9 U.S.C. § 205 ("Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, . . . defendants may, at any time

before the trial thereof, remove such action or proceeding to the district court.").

As to the first step, district courts interpret the relatedness requirement broadly. *See e.g., Infuturia Glob. Ltd. v. Sequus Pharm., Inc.*, 631 F.3d 1133, 1138 (9th Cir. 2011) ("The phrase 'relates to' is plainly broad, and has been interpreted to convey sweeping removal jurisdiction in analogous statutes."); *see also Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002) (holding that the phrase "relates to" is a "low bar" and district courts will have jurisdiction under § 205 in "just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense. As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case."). Whether the Arbitration Agreement is ultimately enforceable is not relevant at the motion to remand stage; instead, the Court needs to find merely that "a court *could* find that the Agreement governs this dispute." *Sunvalley Solar, Inc. v. CEEG (Shanghai) Solar*, No. CV155099PSGJPRX, 2015 WL 5471434, at *2 (C.D. Cal. Sept. 18, 2015) (emphasis added).

Here, the subject matter of Plaintiff's case relates to the Arbitration Agreement, which provides that "any and all controversies, claims, or disputes with anyone . . . arising out of, relating to, or resulting from my employment or relationship with the company or the termination of my employment or relationship with the company, . . . shall be subject to binding arbitration under the Federal Arbitration Act." Arbitration Agreement, Declaration of Ping Yu, ¶ 5, Ex. A, ECF No. 8-5 (emphasis omitted). The Court finds that the Arbitration Agreement could govern this dispute because the dispute arises out of Plaintiff's employment and termination of her employment with Tencent, which is expressly covered by the Agreement.

Turning to the second step, Defendant must show that the Arbitration Agreement falls under the Convention. To fall under the Convention, "the award [or arbitration agreement] (1) must arise out of a legal relationship (2) which is commercial in nature and (3) which is not entirely domestic in scope." *Ministry of Def. of Islamic Republic of Iran v. Gould Inc.*, 887 F.2d 1357, 1362 (9th Cir. 1989); 9 U.S.C. § 202. Here, there is little debate that the Arbitration Agreement falls under the Convention. The Agreement arises out of Plaintiff's legal employment relationship, which is commercial in nature because Plaintiff's role required her to work with

international teams on multi-national scale projects. *Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 200–01 (1956) (discussing that indicia of an employee "working in commerce" includes "producing goods for commerce, or [ ] engaging in activity that affected commerce."); *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (affirming that "involving commerce in the FAA [Federal Arbitration Act]" has consistently been interpreted to be "the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power."). Finally, Plaintiff's legal relationship with Tencent is not "entirely domestic in scope" because Plaintiff is a lawful permanent resident of the United States and not a United States citizen, Plaintiff worked on international teams, and Tencent America is wholly owned by "a multinational technology conglomerate headquartered in Shenzhen, China." ECF No. 8-3, Ex. B, ¶12; *see also LaPine v. Kyocera Corp.*, No. C 07-06132 MHP, 2008 WL 2168914, at *4 (N.D. Cal. May 23, 2008) (holding that "the arbitral award made in the United States under American law falls under the Convention as defined in 9 U.S.C. section 202 because one of the parties to the arbitration, Kyocera, is not a citizen of the United States.").

Defendants have demonstrated that the Arbitration Agreement relates to Plaintiff's case and falls under the Convention. Defendants have properly removed this case to this District pursuant to § 205. Plaintiff's motion to remand is DENIED.

**B. Motion to Compel Arbitration**

Tencent moves to compel arbitration under the Arbitration Agreement. ECF No. 8. Similar to Plaintiff's arguments regarding remand, Plaintiff asserts that the EFAA precludes enforcement of the Arbitration Agreement because Plaintiff has pled a sexual harassment claim under California's Fair Employment and Housing Act ("FEHA"), Government Code § 12940(j), *et seq*.

The EFAA amended the Federal Arbitration Act to give plaintiffs, who allege sexual harassment or sexual assault, the ability to opt out of an agreement to arbitrate entered into prior to the dispute. 9 U.S.C. §§ 401-402 ("at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement or

predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute."). The EFAA defines a sexual harassment dispute to "mean[ ] a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). Plaintiff contends that her complaint alleges a sexual harassment dispute under California's FEHA.

As a threshold issue, "[D]istrict courts in and outside the Ninth Circuit disagree as to the appropriate standard for determining 'the allegations that are necessary to invoke the EFAA in the first place and to determine whether the statute is applicable to the case.'" *Van De Hey v. EPAM Sys. Inc.*, No. 24-CV-08800-RFL, 2025 WL 829604, at *3 (N.D. Cal. Feb. 28, 2025) (quoting *Diaz-Roa v. Hermes L., P.C.*, 2024 WL 4866450, at *14 (S.D.N.Y. Nov. 21, 2024)) (discussing that a majority of courts evaluate EFAA arguments under the Rule 12(b)(6) pleading standard and a minority of courts apply a more liberal standard). The Court agrees with other decisions in this District in holding that the Federal Rules of Civil Procedure 12(b)(6) pleading standard applies to EFAA arguments and incorporates the reasoning from this District's recent *Van De Hey* decision. 2025 WL 829604, at *3. The *Van De Hey* court found that the 12(b)(6) pleading requirements applied because:

> [T]he EFAA requires conduct to be "alleged to constitute sexual harassment *under applicable Federal, Tribal, or State law.*" 9 U.S.C. § 401(4) (emphasis added). This language is best read to "implicitly incorporate the plausibility standard," which is longstanding and is well-known to Congress. *See Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023). Courts in other contexts have previously construed the statutory term "allege" to require the court to apply a plausibility standard. *See id.* at 587. Furthermore, reading the EFAA to void arbitration agreements even where a plaintiff cannot plausibly plead a claim for sexual harassment could incentivize the bringing of "facially unsustainable" claims as a mechanism to evade otherwise binding arbitration agreements. *Id.* at 586.

*Van De Hey*, 2025 WL 829604, at *3. Further, as the *Van De Hey* court held, "[a]pplying the plausibility standard is not unduly prejudicial to" Plaintiff. *Id.* Plaintiff has had years to collect sufficient information to state a claim for relief and has rested on her original complaint without amendment. "Finally, in the event that a plaintiff is compelled into arbitration and later uncovers

additional information that bolsters the plausibility of the sexual harassment claim—*see, e.g.*, *Ding v. Structure Therapeutics, Inc.*, No. 24-CV-01368-JSC, 2024 WL 4609593, at *11 (N.D. Cal. Oct. 29, 2024)—plaintiff may move to lift the stay in federal court in order to re-litigate the motion to compel arbitration. Therefore, a plaintiff is not left without recourse when the court applies the plausibility standard to determine the applicability of the EFAA." *Id.*

Here, Plaintiff has not plausibly alleged a FEHA sexual harassment claim. Under FEHA, "'harassment' because of sex includes sexual harassment, gender harassment, and harassment based on pregnancy, childbirth, or related medical conditions." Cal. Gov't Code § 12940(j)(4)(C). Sexual harassment includes "verbal, physical, and visual harassment, as well as unwanted sexual advances." Cal. Code Regs. tit. 2, § 11034(f). An employer may be liable for sexual harassment even when the harassing conduct was not motivated by sexual desire." *Id.*; Cal. Gov't Code § 12940(j)(4)(C). To state a successful harassment claim, a plaintiff must show that "(1) she is a member of a protected group; (2) she was subjected to harassment because she belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013). Courts look to the totality of the circumstances to determine whether harassment is severe or pervasive enough to alter the workplace environment. *Bailey v. San Francisco Dist. Attorney's Off.*, 16 Cal. 5th 611, 628 (2024); Cal. Gov't Code § 12923(c). "[O]ffhand comments[ ] and isolated incidents (unless extremely serious) are not sufficient to create an actionable claim of harassment." *Bailey*, 16 Cal. 5th at 628 (finding that a single use of an "unambiguous racial epithet" could "give[] rise to a triable issue of actionable harassment" under the FEHA); *McCaffrey v. Republic Servs., Inc.*, No. 23-CV-06224-SI, 2025 WL 360745, at *7 (N.D. Cal. Jan. 31, 2025) (holding at summary judgment that "being called 'old man' " twice does not create an objectively hostile working environment").

Plaintiff alleges the following facts in her complaint:

- "Specifically, from the beginning of her employment and continuing through 2024, Zhu made repeated sexually suggestive remarks to and about Plaintiff in Tencent's official workplace communication system, WeCom, as well as during team meetings." Compl. ¶ 21.

- Plaintiff points to three specific comments:
  - "In one instance, when Plaintiff asked Zhu for a document needed for her work, he responded with, **"Let me put on my pants first,"** a comment with inappropriate sexual connotations." *Id.* ¶ 22.
  - "On other occasions, he referred to coworkers using slang terms for sexual threesomes and called Plaintiff gendered nicknames such as **"boss's wife"** and **'landlady who collects rent.'"** *Id.* ¶ 23.
- "Zhu's comments made Plaintiff and other colleagues uncomfortable. Some coworkers privately expressed concern for Plaintiff's well-being and acknowledged the inappropriate tone Zhu had set in workplace communications. Zhu also publicly belittled Plaintiff in WeCom chats and team settings, accusing her of "yelling," telling her to "mind your own business," and asserting that she was being pushed around by vendors, comments that purposefully attempted to demean and undermined her." *Id.* ¶ 25.
- Plaintiff reported these concerns to HR. HR informed Plaintiff that the "misconduct had been confirmed." *Id.* ¶ 28.
- HR convened a meeting with Plaintiff's team and made comments about how to improve workplace behavior. Soon after, Plaintiff began experiencing retaliatory treatment from her manager. She was ultimately terminated from her position.

These allegations, while troubling, do not state a claim for sexual harassment under FEHA. While one or two comments can be enough to allege harassment if the comments are sufficiently severe, the statements that Plaintiff alleges are not like the "unambiguous racial epithet" in *Bailey. Bailey*, 16 Cal. 5th at 630. Furthermore, while Plaintiff alleges that Zhu made other comments on other occasions, her complaint does not indicate whether this happened more than these three times during her two years of employment. Nor does Plaintiff provide any other information about the pervasiveness of the alleged harassment. Plaintiff makes conclusory statements about what the conduct amounted to, however, the comments themselves – "Let me put my pants on first," "boss's wife" and "landlady who collects rent" – are not on their own indicative of sexual harassment. Plaintiff does not allege, for example, that she "was subjected to unwelcome sexual advances." *Johannessen v. JUUL Labs, Inc.*, No. 3:23-cv-03681-JD, 2024 WL 3173286, at *4 (N.D. Cal. June 24, 2024) (quoting 2 Cal. Code Regs. § 11019(2)). Nor does Plaintiff allege "physical or visual harassment of a sexual nature." *Id.* Without further explanation or specific allegations, Tencent's decisions to move Plaintiff off of certain projects and remove her budget authority are not enough to constitute harassment. "Personnel actions such as 'hiring and firing,

job or project assignments, . . . the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, . . . and the like, do not come within the meaning of harassment.' " *Id.* (quoting *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 64–65 (1996)). Plaintiff has not alleged sufficient facts regarding the disparaging comments and workplace concerns for the Court to conclude they were "severe or pervasive enough to alter the workplace environment" for the EFAA to apply. *Van De Hey*, 2025 WL 829604 at *4.

Accordingly, Tencent's motion is GRANTED, and the Court compels Plaintiff's claims to arbitration.

## III. CONCLUSION

The Court DENIES Plaintiff's motion to remand and GRANTS Tencent's motion to compel arbitration. Because the Court grants the motion to compel arbitration, it does not reach the merits of Defendants' motion to dismiss and terminates the motion as moot.

All claims are stayed pending resolution of the arbitration under 9 U.S.C. § 3. The parties shall file a joint report every 180 days to update the Court on the arbitration proceedings, starting from the date of this Order, and within 14 days of completion of the arbitration proceedings.

**IT IS SO ORDERED.**

Dated: July 28, 2026

Noël Wise
United States District Judge